# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLES TAYLOR** | **CIVIL ACTION NO. 6:11-cv-0505** |
| **LA. DOC # 229964** | |
| **VS.** | **SECTION P** |
| | **JUDGE DOHERTY** |
| **OWNER, LOUISIANA CORRECTIONAL** | |
| **SERVICE, INC.** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Charles Taylor, proceeding *in forma pauperis*, filed the instant civil rights complaint on March 28, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the South Louisiana Correctional Center (SLCC), Basile, Louisiana. Plaintiff complains that the SLCC law library is inadequate and that the immigration detainees who are also incarcerated at SLCC are given more privileges than LDOC inmates. Plaintiff sued the owner of Louisiana Correctional Service, Inc. (LCS). He prayed for damages of $1,000,000; he also prayed that the same amount be paid to each inmate incarcerated at the facility.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

### *Background*

Plaintiff is an LDOC inmate who is presently incarcerated at the SLCC. He claims that the facility's law library is inadequate because it lacks "any updated law book needed for inmates to

pursue their constitutional and civil claims in Court…" or a certified law clerk to assist him. Plaintiff submitted grievances raising this issue and requested a transfer to the St. Charles Correctional Center which apparently has a law library with updated law books. In one of the grievances he submitted, he acknowledged that he was not denied the privilege to attend the law library, rather, he alleged that he "… received a letter from the Court 3/7/11, and I went to the law library to read the case laws that was cited to me to research, so I can respond back to court. I was informed that this law library do not have these case laws. Since this law library do not have any updated books or case law, than this automatically denied me a fundamental constitutional right to adequate, effective and meaningful access to courts to challenge a violation of my constitutional rights."

He also complains that he and other LDOC inmates are the victims of discrimination because "INS inmates get more yard time than the DOC inmates… [and] have access to the law library computer when the DOC inmates [are] not allowed to do so… [and] get free clothes, shoes, etc…" [however] DOC inmates have to pay for the state clothes issued to them." Finally, he complains that INS detainees are paid $7/week for work done at the facility while LDOC inmates "do not get nothing."

## *Law and Analysis*

### *1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. . *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has filed an articulate complaint which succinctly sets forth his claims for relief. No further amendment is necessary because the complaints, accepted as true, simply fail to state a claim for which relief may be granted.

## 2. Access to Courts

Plaintiff complains that he is being denied his right of access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff has not shown how his ability to prepare and transmit legal documents has in any way been inhibited. The records of this court demonstrate that he is presently litigating three civil actions in this Court. In the matter entitled *Charles Taylor v. Owner, LCS, et al.*, No. 3:11-cv-0140, plaintiff and other inmates at the Caldwell Detention Center filed an original complaint concerning conditions of confinement at that facility (lack of educational or rehabilitation programs, prison jobs, and the ability to earn good time credits) on January 24, 2011. [Doc. #2]. On the same date plaintiff

also filed an application for leave to proceed *in forma pauperis*. [Doc. #3] On January 28, 2010 he filed a request for additional forms. [Doc. #1] On February 24, 2011 he filed Motions to Appoint Counsel. [Docs. #5 and 6] On March 3, 2011 he filed a notice of change of address advising the court of his recent transfer to his present place of confinement. [Doc. #7] On March 16, 2011 he filed an appeal of the Magistrate Judge's order denying his motion to appoint counsel. [Doc. #9] On April 14, 2011 he filed a Notice of Appeal and a Motion for Certificate of Appealability. [Docs. #12-13] Finally, on May 4, 2011 he filed a motion to proceed *in forma pauperis* on appeal. [Doc. #18]

In the matter entitled *Charles Taylor v. Owner, LCS, et al.*, No. 3:11-cv-0323, plaintiff filed a complaint and exhibits complaining of conditions of confinement (discrimination, favoritism, and unsanitary conditions) at the Caldwell Corrections Center on February 24, 2011. [Doc. #1] He also filed a motion for leave to proceed *in forma pauperis* on March 11, 2011. [Doc. #4]

With regard to the instant civil action, plaintiff has filed a complaint [Doc. #1] and a Motion to proceed in forma pauperis. [Doc. #4]

Plaintiff clearly did not need an "up-to-date" law library or the assistance of a law clerk to transmit his various pleadings and motions to this court.

Further, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or

collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

Plaintiff claims that he was prejudiced because he received a letter from the court on March 7, 2011. Plaintiff claims that cases were cited in the letter but he was unable to read the cases because they were not available in the law library. Accordingly, plaintiff claimed that he was unable to "respond back to the Court." It is unclear which court plaintiff is referring to. However, in Civil Action No. 3:11-cv-0140, Magistrate Judge Karen L. Hayes signed an order on March 3, 2011 denying plaintiff's motion to transfer to another prison, his motion for the appointment of counsel, and his motion for a protective order. This order was mailed on the same date and presumably plaintiff received it on March 7 as stated above. As further noted above, on March 16, 2011 plaintiff objected to the order and submitted a "Traverse" which cited appropriate jurisprudence and facts in support of his argument. [Doc. #9] His objection or appeal was subsequently denied by Judge James on April 1, 2011. [Doc. #11] Plaintiff cannot seriously contend that access to a law book or the assistance of a paralegal would have altered the outcome of his motions or his objection to Magistrate Judge Hayes's Report and Recommendation, and the ultimate judgment rendered by Judge James with respect to the motions.

In other words, plaintiff has not been denied the where with all to transmit non-frivolous legal pleadings to the courts of Louisiana or the United States; and, further, having failed to establish prejudice, plaintiff's access to court complaint must be dismissed for failing to state a claim for which relief may be granted.

## 2. Discrimination

Plaintiff complains that the defendants discriminated against him his fellow LDOC convicts by providing more benefits to "INS" detainees.[1] Claims of discrimination arise, if at all, under the Equal Protection Clause of the Fourteenth Amendment.

Classifications which involve neither fundamental rights nor proceed along suspect lines are accorded a strong presumption of validity and cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

Equal protection challenges raised by prisoners must be scrutinized in such a way as to ensure that prison officials are afforded the necessary latitude and discretion to operate their facilities in a safe and secure manner. Thus, even arguably disparate treatment which is nonetheless reasonably related to legitimate penological interests may survive in the face of a Fourteenth Amendment Equal Protection challenge. *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir.2002). This is so because federal courts cannot disregard the special difficulties that arise in the prison context and must accord great deference to the decisions of prison administrators who are charged with making difficult judgments concerning prison operations. In short, prisoners do not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system. *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir.1990).

Plaintiff complains that the immigration detainees housed at SLCC are afforded more

---

[1] The enforcement functions of the Immigration and Naturalization Service (INS) within the Department of Justice were transferred to the Bureau of Immigration and Customs Enforcement (ICE) within the Department of Homeland Security (DHS) in March 2003. See 6 U.S.C. § 251.

privileges than are LDOC convicts including (1) "more yard time ... [t]he INS inmates get to go on the yard 3 times a day when the DOC inmates go on the yard 1 time a day and only for 30 minutes..."; (2) "... INS inmates have access to use the law library computer when the DOC inmates [are] not allowed to do so..."; (3) "[t]he INS inmates get free clothes, shoes, etc. [but] DOC inmates have to pay for the state clothes [issued] to them..." and, (3) "[t]he INS inmates receive $7/week, the DOC inmates who work for this private ... correctional facility do not get nothing..."

While the immigration detainees are apparently afforded more rights and privileges than are LDOC convicts, this case does not involve a suspect class since neither prisoners nor convicts are a suspect class for purposes of constitutional protection. *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir.1998).

Furthermore, alien detainees are not prisoners. See 28 U.S.C. § 1915(h) (Under the PLRA, "... the term 'prisoner' means any person incarcerated or detained in any facility who is <u>accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program</u>.");  *Ojo v. INS*, 106 F.3d 680, 682-83 (5th Cir.1997) (Alien detainees are detained for a violation of immigration law rather than criminal law.)  The allegedly disparate forms of treatment that triggered this  complaint, are reasonably related to advancing legitimate penological interests.  Convicted inmates, by virtue of their convictions, lose many of the rights and privileges that are afforded to individuals who have not been convicted of crime. Plaintiff's complaint to the contrary fails to state a claim for which relief may be granted.

To the extent that plaintiff claims that he is entitled to be paid for the prison work he performs, he likewise fails to state a claim for which relief may be granted since the Constitution

does not forbid an inmate from being required to work without pay or compensation. *See Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir.2001). Put another way, prisoners have no constitutional right to be paid for work performed in prison. *Rochon v. Louisiana State Penitentiary Inmate Account*, 880 F.2d 845 (5th Cir.1989), *cert. denied*, 493 U.S. 1029, 110 S.Ct. 742, 107 L.Ed.2d 759 (1990). Any compensation which is paid to prisoners is by grace of the state. *Wendt v. Lynaugh*, 841 F.2d 619 (5th Cir.1988). While the State of Louisiana provides some compensation for inmate labor, the amount, if any, of such compensation is established by the secretary of the Department of Corrections. See LSA-R.S. 15:832; LSA-R.S. 15:873. The fact that SLCC is owned and managed by a private corrections corporation does not mean that plaintiff is not incarcerated in a state correctional facility, and, the fact that the private prison contractor has custody of the plaintiff does not mean that plaintiff is employed and entitled to be paid by the private corporation. To the extent that plaintiff is entitled to wages, the source of those wages is the State of Louisiana, and not LCS. *Richardson v. Rees*, 618 So.2d 636, 640 (La. App. 2 Cir. 5/5/1993).

Finally, to the extent plaintiff complains that he is required to pay a portion of the costs associated with his imprisonment, he also fails to state a claim. Policies such as "co-pay" policies or "fee-for-service" programs which require inmates to bear part of the cost of their confinement are constitutionally permissible so long as the basic needs of indigent offenders are met. Compare *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997) (co-pay medical policy); *Shapley v. Nevada Bd. of State Prison Comm's*, 766 F.2d 404 (9th Cir.1985) (co-pay medical policy); *Cameron v. Sarraf*, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98-1227-AM.) (co-pay medical policy); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1225-1227 (E.D.Pa.1996) (fee-for-service-program); *Johnson v. Dept. of Public Safety and Correctional Services*, 885 F.Supp.

817 (D.Md.1995) (co-pay medical policy). In other words, nothing in the United States Constitution guarantees inmates the right to be entirely free from all of the costs associated with their confinement and rehabilitation. *Reynolds*, 128 F.3d, at 175. It is only when necessary needs are absolutely denied to impecunious inmates that the Eighth Amendment is implicated. See, e.g., *Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir.1992); *Johnson*, 885 F.Supp. at 820.

### *Order and Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United***

*Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).


In Chambers, Lafayette, Louisiana May 11, 2011.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)